```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

JAMES COLTER,

        Plaintiff,

  vs.                                 Civil Action 2:14-cv-1907
                                        Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## OPINION AND ORDER

**I. Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 17, and the Commissioner's *Memorandum in Opposition*, Doc. No. 20.

Plaintiff James Colter filed his application for benefits on June 15, 2011, alleging that he has been disabled since May 20, 2011. *PAGEID* 268, 415-21. The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on May 9, 2013, at which plaintiff, represented by counsel, appeared and testified, as did John

R. Finch, Ph.D., who testified as a vocational expert. *PAGEID* 268, 285.  In a decision dated June 27, 2013, the administrative law judge concluded that plaintiff was not disabled from May 20, 2011, through the date of the administrative decision.  *PAGEID* 268-80.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 28, 2014. *PAGEID* 34-37.

Plaintiff was 35 years of age on the date of the administrative decision.  *See PAGEID* 280, 415.  He was insured for disability insurance purposes through at least June 27, 2013.  *PAGEID* 270, 280. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a tow motor driver, picker/packer, and laborer.  *PAGEID* 278.  He has not engaged in substantial gainful activity since May 20, 2011, the alleged onset date.  *PAGEID* 270.

**II.  Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the lumbar spine, degenerative changes of the right hand, chronic left acromioclavicular joint separation, borderline intellectual functioning, anxiety disorder, attention deficit-hyperactivity disorder, and an impulse control disorder.  *PAGEID* 270.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

2

>    perform light work as defined in 20 CFR § 404.1567(b) except the claimant cannot climb ladders, ropes or scaffolds and is limited to frequent use of the right upper extremity for fingering, feeling and handling.  Mentally, the claimant is capable of performing simple, repetitive tasks in a relatively static environment not involving a fast assembly line work pace, strict production quotas, more than occasional contact with co-workers and supervisors, or any public contact.

*PAGEID* 271-74.  Although this RFC precludes the performance of plaintiff's past relevant work as a tow motor driver, picker/packer, and laborer, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as cleaner, sorter, and garment folder.  *PAGEID* 278-79.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 20, 2011, through the date of the administrative decision.  *PAGEID* 280.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y*

*of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge erred by failing to include in his RFC determination all the limitations opined by the state agency psychological consultants, to whose opinions the administrative law judge assigned great weight. *Statement of Errors*, pp. 16-17. Plaintiff specifically argues that "the ALJ should have recognized that Mr. Colter would have limitations in his ability to understand, remember and carry out very short and simple instructions as well as would require some level of special supervision. The RFC does not reflect such limitations rendering the finding unsupported by substantial evidence." *Id*. at p. 17.

An RFC determination is an indication of an individual's work-related abilities despite his limitations. *See* 20 C.F.R. §

4

404.1545(a). The RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). A claimant's RFC represents the most, not the least, that a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). In assessing a claimant's RFC, an administrative law judge must consider all relevant record evidence, including medical source opinions, on the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, courts have stressed the importance of medical opinions to support a claimant's RFC, and have cautioned administrative law judges against relying on their own claimed expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, No. 1:08-CV-828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)).

Plaintiff does not challenge the weight assigned to the state agency psychological consultants. Instead, plaintiff argues that the administrative law judge failed to include in his RFC determination all the limitations opined by the state agency psychological consultants. *Statement of Errors*, pp. 16-17. Karen Steiger, Ph.D., reviewed the record and completed a mental RFC assessment on October 16, 2011. *PAGEID* 333-35. According to Dr. Steiger, plaintiff is moderately limited in his ability to understand and remember very short and simple instructions and markedly limited in his ability to understand and remember detailed instructions. *PAGEID* 333. When

5

asked to explain these limitations in narrative form, Dr. Steiger noted that plaintiff "is likely to have difficulty understanding and remembering complex, multi-step instruction.  However, he demonstrates the ability to follow simple 1-2 step tasks." *Id*.  Dr. Steiger also opined that plaintiff was moderately limited in his ability to carry out very short and simple instruction; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *PAGIED* 334.  Plaintiff was markedly limited in his ability to carry out detailed instructions. *Id*.  Dr. Steiger explained that these limitations in sustained concentration and persistence would limit plaintiff to the performance of "simple tasks performed at a reasonable rate.  He would need regularly scheduled breaks." *Id*.  Dr. Steiger opined that plaintiff is moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*.  Dr. Steiger specifically commented in this regard that plaintiff "would be able to interact with others on a superficial/occasional basis." *Id*.  Dr. Steiger further opined that plaintiff would be moderately limited

6

in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *PAGEID* 335.  Dr. Steiger explained that plaintiff "can adapt to a setting in which duties are routine and predictable and which does not involve strict time limitations or production standards."  *Id*.

Katherine Fernandez, Psy.D., reviewed the record on May 29, 2012, and affirmed Dr. Steiger's mental RFC assessment, except that Dr. Fernandez opined that plaintiff is markedly limited in his ability to interact appropriately with the general public.  *PAGEID* 353-55.  Dr. Fernandez also opined that plaintiff "[s]hould not be required to interact with the public" and "[s]hould work in a setting without requirements for fast pace.  No frequent distractions."  *PAGEID* 353-54.

The administrative law judge assigned "great weight" to the opinions of Dr. Steiger and Dr. Fernandez, and found that, "[m]entally, the claimant is capable of performing simple, repetitive tasks in a relatively static environment not involving a fast assembly line work pace, strict production quotas, more than occasional contact with co-workers and supervisors, or any public contact."  *PAGEID* 273-74.  Plaintiff argues that the administrative law judge failed to "include a limitation addressing some need for special supervision" and "should have recognized that Mr. Colter would have limitations in his ability to understand, remember and carry out very short and simple instructions as well as would require some level of special supervision."  *Statement of Errors*, p. 17.  Plaintiff's arguments are

7

not well taken.

Dr. Steiger and Dr. Fernandez each completed a mental RFC assessment addressing 20 areas of functioning related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  *See PAGEID* 333-35, 353-55.  Dr. Steiger and Dr. Fernandez then explained in narrative form plaintiff's limitations in each area of functioning.  The administrative law judge included limitations in plaintiff's RFC to account for the limitations addressed in the doctors' narrative reports.  Plaintiff argues that the administrative law judge should have included "a limitation addressing some need for special supervision" in his RFC determination.  *Statement of Errors*, p. 17.  However, the narrative reports of Dr. Steiger and Dr. Fernandez did not include a limitation for special supervision.  The Court finds no error in the administrative law judge's decision to rely on Dr. Steiger's and Dr. Fernandez's narrative reports.

Plaintiff next argues that, "[a]lthough the ALJ found that Mr. Colter's chronic left acromioclavicular joint separation was a severe impairment, his RFC finding did not reflect any limitations arising from said impingement."  *Id*. at pp. 17-18.  In determining plaintiff's RFC, the administrative law judge expressly considered the medical evidence and plaintiff's testimony regarding his chronic left acromioclavicular joint separation.  *PAGEID* 275-76.  The administrative law judge concluded that plaintiff can perform "light work as defined in 20 CFR § 404.1567(b) except the claimant cannot

8

climb ladders, ropes or scaffolds and is limited to frequent use of the right upper extremity for fingering, feeling and handling." *PAGEID* 273.  This determination is supported by substantial evidence, *see PAGEID* 333, 351, and, plaintiff's arguments to the contrary notwithstanding, reasonably accounts for plaintiff's left shoulder impairment.  *See PAGEID* 311 (plaintiff's testimony that his shoulder injury causes "difficulty lifting things").  Plaintiff has pointed to evidence of a "left shoulder impairment."  *Statement of Errors*, p. 18.  Plaintiff has not, however, pointed to any evidence that his shoulder impairment causes greater limitations than those found by the administrative law judge.  The mere fact that the record documents a shoulder impairment says little about whether and to what degree the condition results in work-related limitations.  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("But not every diagnosable impairment is necessarily disabling."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.") (citing *Foster v. Brown*, 853 F.2d 483, 489 (6th Cir. 1988)).  The Court finds no error in this regard.

      Plaintiff next argues that the administrative law judge erred in evaluating the opinion of Lari Meyer, Ph.D.  *Statement of Errors*, pp. 18-20.  "Dr. Meyer's opinion that Mr. Colter would require increased supervision with frequent redirection in order to maintain attention to complete simple tasks was based on Plaintiff's tangential thinking and frequent redirection required during her examination,"

9

*id*. at p. 19, is "consistent with the medical evidence in the record" and is "mirrored by the opinions of . . . Drs. Steiger and Fernandez." *Id*. at pp. 19-20. Plaintiff also complains that the administrative law judge "did not consider Dr. Meyer's explanation" with regard to intellectual testing. *Id*. at p. 19.

Plaintiff was consultatively examined by Dr. Meyer on October 4, 2011. *PAGEID* 526-41. On the WAIS-IV, plaintiff achieved a full-scale IQ score of 67. *PAGEID* 535. However, Dr. Meyer commented that plaintiff's test "results are likely at least somewhat of an under-prediction of true levels of abilities" and opined that "it is likely that he functions within at least the borderline range overall." *Id*. Dr. Meyer also diagnosed impulse control disorder, NOS, and attention deficit hyperactivity disorder, NOS; she assigned a global assessment of functioning ("GAF") score of 60, *PAGEID* 537-38, which is suggestive of only moderate symptomatology. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

According to Dr. Meyer, plaintiff "would be able to understand, remember, and follow simple verbal or visual-spatial instructions in order to complete a basic work task, but would demonstrate difficulty with more complex verbal or visual-spatial instructions." *PAGEID* 538. "In order to maintain attention to complete simple tasks, [plaintiff] would require increased supervision with frequent redirection. He would demonstrate increased difficulty in maintaining attention for more complex tasks." *PAGEID* 539. Plaintiff "would be able to relate to others on a simple level only due to impairments in verbal

10

comprehension skills related to borderline intellectual functioning," *id.*, and "would be able to relate to others on a time-limited basis only." *Id*. Dr. Meyer further opined that plaintiff "would be able to respond appropriately to simple, rote, and repetitive work tasks only, and only in low stress work situations. He would demonstrate difficulty with more complex tasks due to impairments in problem solving abilities and borderline intellectual functioning." *Id*.

As a consultative examiner, Dr. Meyer is properly classified as a nontreating source. *See* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). With regard to nontreating sources, the agency will simply "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. *Id*. In determining the weight to be given the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)).

The administrative law judge evaluated Dr. Meyer's opinion and afforded it "some weight:"

> In October 2011, Lari Meyer, Ph.D., performed an independent psychological consultative examination and

11

> opined that the claimant could understand, remember and follow simple instructions, but would have some degree of limitation in maintaining attention and concentration, interacting with others, and tolerating work-related stressors (Exhibit 6F).
>
> Dr. Meyer's opinion is only given some weight as much of her assessment was based entirely on the claimant's subjective report of symptoms. Furthermore, while she noted some issues relating to intellectual functioning, she also noted that intelligence testing was of questionable validity. Third, she reported a GAF score of 60, which suggest limitations in functioning at the upper end of the moderate range and which is not consistent with a finding of mental disability.

PAGEID 274.

The administrative law judge did not err in evaluating Dr. Meyer's opinion. The administrative law judge was sufficiently specific as to the weight assigned to Dr. Meyer's opinion and the reasons for assigning that weight, and his reasons are supported by substantial evidence. Plaintiff does not contest that much of Dr. Meyer's opinion appears to be based on plaintiff's subjective reports of symptoms. The Court also notes that it is not improper for an administrative law judge to consider whether a medical opinion is dependent on the claimant's reports of symptoms and limitations, especially where, as here, the administrative law judge also finds that the claimant's subjective symptoms and reported limitations are not entirely credible.[1] *See* PAGEID 275-78. Plaintiff challenges the administrative law judge's discounting of Dr. Meyer's opinion regarding plaintiff's attention and concentration as based on

---

[1] Plaintiff does not challenge the administrative law judge's credibility determination.

plaintiff's subjective reports; according to plaintiff, Dr. Meyer's opinion in this regard was "based on Plaintiff's tangential thinking and frequent redirection required during her examination." *Statement of Errors*, p. 19.  However, even this portion of Dr. Meyer's opinion, *PAGEID* 539, notes plaintiff's subjective reports of "attentional impairments." *Id.* Moreover, and consistent with the administrative law judge's analysis, Dr. Meyer also noted that plaintiff's full-scale IQ score was "likely at least somewhat of an under-prediction of true levels of abilities," and she assigned a GAF of 60, which is "at the upper end of the moderate range." *See Norris*, 461 F. App'x at 436 n.1.  Accordingly, the Court finds that the administrative law judge's evaluation of Dr. Meyer's opinion enjoys substantial support in the record.

In a related argument, plaintiff contends that the administrative law judge erred in relying on the testimony of the vocational expert. *Statement of Errors*, pp. 20-21.  Plaintiff specifically argues that the hypothetical posed to the vocational expert was incomplete because it "did not include the State agency opinions regarding Mr. Colter's limitations in understanding, remembering and carrying out very short and simple instructions and requiring some type of special supervision nor did it incorporate any limitations addressing his left shoulder impairment." *Id*.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question

must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516. "Hypothetical questions, however, need only incorporate those limitations which the [administrative law judge] has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey v. Sec'y of Health & Human Servs.*, 987F.2d 1230, 1235 (6th Cir. 1993)).

    The administrative law judge posed to the vocational expert a complete hypothetical question that incorporated all of plaintiff's impairments as found by the administrative law judge. The vocational expert responded that such an individual could not perform plaintiff's past relevant work as a tow motor driver, picker/packer, and laborer, but could perform such jobs as cleaner, sorter, and garment folder. *PAGEID* 319-20. The administrative law judge relied on this portion of the vocational expert's testimony in determining that plaintiff can perform a significant number of jobs that exist in the national economy, even though he could not perform his past relevant work. *PAGEID* 278-79. The administrative law judge therefore did not err in relying on the vocational expert's testimony in this regard. *See Parks*, 413 F. App'x at 865 ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments. . . . Hypothetical questions, however, need only incorporate those limitations which the ALJ has accepted as credible.") (internal citations and quotations omitted);

14

*Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (where a hypothetical accurately described the plaintiff in all relevant respects, the vocational expert's response to the hypothetical question constitutes substantial evidence).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED**.

This action is hereby **DISMISSED**.  The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


June 10, 2015                                        *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                           United States Magistrate Judge